# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

DONNA OWENS,                    )
                               )
    Plaintiff,           )
                               )
    vs.                  )          **Case No. 4:11CV773JCH/MLM**
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social Security,  )
                               )
    Defendant.           )

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Donna Owens ("Plaintiff") for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 405(g) et seq. Plaintiff filed a Brief in Support of the Complaint. Doc. 13. Defendant filed a Brief in Support of the Answer. Doc. 17. This matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b). Doc. 5.

# I.
# PROCEDURAL HISTORY

Plaintiff filed applications for benefits on March 3, 2009. Tr. 133-39. Her applications were denied and she filed a request for a hearing before an Administrative Law Judge ("ALJ"). Tr. 87-91. A hearing was held before an ALJ on January 29, 2010. Tr. 23-44. By decision, dated May 15, 2010, the ALJ found Plaintiff not disabled. Tr. 5-21. The Appeals Council denied Plaintiff's request for

review. Tr. 1-3.  As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

2

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because

the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) Findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d

1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert ("VE") may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective

complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleged that she became disabled on November 13, 2004, due to degenerative joint disease, screws in her right ankle, retinitis pigmentosa in the left eye, disc herniation, left and right knee pain, a swollen left ankle, and lifelong sexually transmitted diseases. The ALJ found that Plaintiff engaged in substantial gainful activity during the period of September 2006 through January 2009. As such, the ALJ denied Plaintiff's claims during this period. Next, the ALJ found that Plaintiff did not engage in substantial gainful activity from February 1, 2009, through the date of the decision; that Plaintiff had the severe impairments of degenerative disc disease and degenerative joint disease; that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment; that Plaintiff could perform sedentary work as defined in the Act with certain limitations; that Plaintiff could not perform her past relevant work; that, based on the testimony of a VE, there was work in the St. Louis metropolitan area and national economy which Plaintiff could perform; and that, therefore, Plaintiff was not disabled through the date of the ALJ's decision. Tr. 8-17.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to point to "some" medical evidence when determining her RFC and because the hypothetical which the ALJ posed to the VE and upon which the ALJ relied was flawed.

## A.    ALJ's Credibility Determination:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. Guilliams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe, 226 F.3d at 972. See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson,

361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff had a "relatively limited history of medical treatment"; that she had "no recent surgery, physical therapy, or chiropractic treatments; and that there was "no evidence of recent emergency room treatment, hospitalizations, or injections for pain relief." The ALJ also considered that there was no evidence that Plaintiff had been refused medical treatment due to an inability to pay. Tr. 15. A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing Benskin, 830 F.2d at 884); Polaski, 739 F.2d at 1322. Additionally, a lack of objective medical evidence contradicts a claimants allegations of disabling pain. Comstock, 91 F.3d at 1147 (citing Smith v. Shalala, 979 F.2d 1371, 1374 (8th Cir. 1993)). The court finds that the ALJ's decision, in this regard, is based on substantial evidence and that it is consistent with the Regulations and case law.

Second, the ALJ considered that Plaintiff worked for many years after she had ankle surgery and that the record reflected significant work activity since Plaintiff's alleged onset date. Tr. 15. Indeed, Dr. Greg A. Kranzusch, D.P.M., F.A.C.F.A.S., reported on December 16, 2008, when

Plaintiff presented with ankle pain, that she was "still working [at] Walgreens 30 hours a week." Tr. 358. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff, 421 F.3d at 792 (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. Moreover, when a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). See also Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls "extreme fatigue," Van Vickle continued working for over four years."). Further, working after the onset of an impairment is evidence of an ability to work. Goff, 421 F.3d. 793; Goswell v. Apfel, 242 F.3d 793, 798 (8th Cir. 2001). Section 404.1574(a)(1) further states that work which a claimant is forced to stop or reduce below the substantial gainful activity level after a short time because of his impairment is generally considered an unsuccessful work attempt. "[A] condition that was not disabling during working years and has not worsened cannot be used to prove present disability." Naber, 22 F.3d at 189. As such, the court finds that the ALJ's considerating that Plaintiff worked during the relevant period is supported by substantial evidence and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

Third, the ALJ considered Plaintiff's description of her daily activities and that her allegedly limited daily activities could not be "objectively verified with any reasonable degree of certainty." The ALJ also considered that even if Plaintiff's daily activities were as limited as she described, in

view of the limited medical evidence and other factors considered by the ALJ, it was "difficult to attribute that degree of limitation to [Plaintiff's] medical condition." Tr. 15. A claimant's limitation which is self-imposed rather than a medical necessity is a basis upon which an ALJ may discredit a claimant's alleged limitation. See Blakeman v. Astrue, 509 F.3d 878, 882 (8th Cir. 2007) ("The issue is not whether [the claimant] was credible in testifying that he naps each weekday afternoon he is not working. The issue is whether his heart condition compels him to nap each afternoon."); Brunston v. Shalala, 945 F. Supp. 198, 202 (W.D. Mo. 1996) ("Plaintiff also testified that she spent part of the day lying down; however, no physician stated that such a need existed. If plaintiff was not lying down out of medical necessity, then that indicates that she was lying down by choice."). Further, where there is a lack of documentation regarding a claimant's allegations regarding her limitations, an ALJ may conclude that the claimant's limitations are self imposed. See Schroeder v. Sullivan, 796 F. Supp. 1265, 1270 (W.D. Mo. 1992) (holding that the claimant's need to take naps was not documented in the record and because the claimant failed to complain to his doctors about drowsiness, "contradict[ed] his assertion that he must nap during the day"; "It is as likely that Plaintiff chooses to nap at times he might otherwise choose to remain awake."). The court finds that the ALJ's decision, in this regard, is based on substantial evidence and that it is consistent with the Regulations and case law.

Fourth, the ALJ considered that Plaintiff's use of medications did not suggest the presence of an impairment which was more limiting than found by the ALJ. The ALJ also considered that the physicians' records did not reflect complaints of side effects from Plaintiff's medications and that, to the extent Plaintiff did experience side effects, the record did not document that these side effects would significantly interfere with her ability to engage in sedentary work activity. Tr. 15. The court

notes that, by letter dated February 25, 2009, Plaintiff was informed that she was eligible for Vocational Rehabilitation Services from the State of Missouri. Tr. 306. Conditions which can be controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d at 384; Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). As such, the court finds that the ALJ's decision, in this regard, is based on substantial evidence and that it is consistent with the Regulations and case law.

Fifth, the ALJ considered that Plaintiff received unemployment benefits after ceasing work and that she was receiving benefits at the time of the hearing. Tr. 15. As considered by the ALJ, receiving unemployment compensation benefits adversely affects a claimant's credibility. "A claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work." Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991). The court finds that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.

Sixth, the ALJ considered Plaintiff's appearance and demeanor at the hearing. In particular, the ALJ considered that Plaintiff "displayed no evidence of pain or discomfort" and that "she had not apparent difficulty understanding or responding to questions posed to her." the ALJ found that Plaintiff was in no distress at the hearing, which was a fairly lengthy proceeding. The ALJ emphasized that his observations were only one of many factors considered in reaching a

determination regarding the credibility of Plaintiff's allegations. Tr. 15. While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration. Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson, 240 F.3d at 1147-48 ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); Jones v. Callahan,122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, to reach his conclusion, the ALJ combined his review of the record as a whole with his personal observations.

Seventh, the ALJ considered that a March 18, 2009 MRI of Plaintiff's right knee showed no evidence of internal derangement and that the test results were considered "unremarkable." Tr. 15. The court notes that this MRI also showed that there were no "high-grade cartilage lesions"; that there was no lint effusion; and that the signal of the musculature was normal. Tr. 371. The ALJ further considered that an MRI of the lumbar spine showed: a disc herniation at L5-S1 with focal protrusion contacting the right S1 nerve root "but that [it] did not appear significantly displaced or compressed." The ALJ also considered that this MRI showed lateral recess stenosis from L1 to L4-5, secondary to facet arthropathy. Tr. 13. The court notes that the spinal MRI also showed that the spinal cord "appear[ed] normal"; that the diffuse disc bulge at L5-S1 had a *small* central protrusion *slightly* [illegible] to the right"; and that Plaintiff's facet artropathy resulted in "*mild* bilateral lateral recess stenosis." Tr. 372-73. Dr. Kranzusch reported, on February 10, 2009, that "views of Plaintiff's

foot and ankle on the right revealed excellent union of the ankle with hardware in place with no overt displacement." Tr. 357. The impression from x-rays of Plaintiff's chest taken on February 25, 2009, when Plaintiff complained of chest pain, was "normal chest." Tr. 330-31. A proper factor to be considered is the absence of objective medical evidence to support a claimant's complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. Halverson, 600 F.3d at 932(citing Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008)). The court finds that the ALJ's decision, in this regard, is based on substantial evidence and is consistent with the Regulations and case law.

Eighth, the ALJ considered the reports of doctors who had treated and examined Plaintiff. See Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (holding that an ALJ may discredit a claimant's subjective complaints where there are inconsistencies in the record; the ALJ may give more weight to the medical records than to a claimant's testimony); Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987). The ALJ considered the records of Dr. Kranzusch, who reported, on December 16, 2008, that Plaintiff complained of "ankle swelling with no pain"; that examination revealed "no pain over the ankle artrodesis site, which ha[d] *slight* discomfort of the metatarsal region"; that Plaintiff would benefit from working in a job which did not require she be on her feet; that he was recommending Plaintiff use a heel lift on the right and that Plaintiff attend physical therapy to work on strengthening gait; and that he was sending Plaintiff to pain management. Tr. 13, 358. As considered by the ALJ, Dr. Kranzusch certified, on December 18, 2008, that Plaintiff limit her *lifting* to *no more than forty pounds* and she should take fifteen minute breaks as needed. Tr. 13, 361. Physical therapy instructions prepared by Dr. Kranzusch, on January 23, 2009, state that Plaintiff's status was "post

op ankle fusion" and that she required strengthening and gait training. Tr. 364. As considered by the ALJ, Plaintiff presented to Dr. Kranzusch on February 10, 2009, on which date Dr. Kranzusch reported that Plaintiff reported having significant pain bilaterally; that Plaintiff said pain management was not helping; that Plaintiff described the pain as general; that there was no area on Plaintiff's foot that had severe pain to touch; that the pain occurred when Plaintiff was on her feet fifteen to twenty minutes; and that the doctor and Plaintiff discussed Plaintiff's using a brace to offset a limb length discrepancy and discussed vocational training to allow Plaintiff to be in a secondary position. Tr. 13, 357. The court notes that Dr. Kranzusch also reported, on February 10, 2009, that his objective findings showed "no areas of acute pain or inflammatory process elicited on palpation or percussion"; that there was "*mild bilateral edema*"; that there was no motion of the right ankle consistent with ankle fusion; and that, in regard to Plaintiff's inquiry about pain from the screws, "there [was] no pain with palpation over the screws." Tr. 357. Records of Nathan Watt, C.O., reflect that, pursuant to an orthotic evaluation on February 11, 2009, Plaintiff was to receive a one-inch right heel lift. Tr. 388.

Notes from Christian Hospital Northeast, dated February 25, 2009, state that Plaintiff presented with complaints of pain; that she was alert, active and "moved all extremities equally with good tone"; that Plaintiff denied any numbness or tingling throughout her body; that Plaintiff had "intact musculoskeletal structures with no swelling or deformities; that she was oriented and speaking coherently; that Plaintiff's lung sounds were clear and equal bilaterally; that Plaintiff "experienced [a] positive response" when she was given a morphine injection; that her neck was supple and not tender; that she had "normal ROM in all four extremities"; and that her extremities were "non-tender to palpation." Tr. 318-24.

Ravi K. Kotha, M.D., reported, on February 25, 2009, that there was evidence that Plaintiff had a ruptured or herniated disc in her neck or back. As considered by the ALJ, Dr. Kotha completed a Work Release form which said that Plaintiff should avoid heavy lifting for one week. Tr. 13, 307-10. Muhammud Fazuir, M.D., reported, on February 25, 2009, that Plaintiff complained of left ankle and left knee pain and that she had a history of right ankle fusion and was wearing a right ankle brace. Tr. 354. Dr. Fazuir's notes of this date are otherwise not legible. Tr. 354. Dr. Fazuir again saw Plaintiff on March 3, 2009, on which date he reported that Plaintiff complained of a herniated disc; that she was given morphine and a prescription for hydrocodone; and that she was referred to pain management. Tr. 355. As considered by the ALJ, on May 13, 2009, Plaintiff presented in the emergency room complaining of vomiting and reported that she drank alcohol after taking medication. Tr. 13, 431.

As considered by the ALJ, Alan Morris, M.D., conducted a consultative orthopedic examination of Plaintiff on June 11, 2009. Plaintiff told Dr. Morris that she had been in an automobile accident in 1978 and continued to have problems with her right ankle; that she always used a cane; that she had persistent and constant pain in her right ankle; and that her having to stand when working increased her low back pain and right ankle swelling. Upon examination, Dr. Morris reported that, when Plaintiff walked, she leaned heavily on the cane on her right side; that she had a limp favoring the right side; that she stood erect; that she was unable to heel or toe walk or do a tandem gait; that she could not squat; that she could get on and off the examining table; that her right ankle was "arthrodesed in a position of five degrees plantar flexion"; that she had calf atrophy; that soft tissue thickening was present at the right ankle; that she had no scoliosis or muscle spasm; that she had lumbar lordosis; that she had "no specific areas of localized lumbar tenderness"; that the right

leg was shorter than the left; that Plaintiff's sitting posture was normal; that "x-rays did not reveal any significant joint space narrowing between the femur and tibia"; that there was no hypertrophic spur formation and the patellofemoral joints were normally aligned; that there was normal alignment of the lumbar vertebrae and disc spaces were normal height; that there were no degenerative changes; and that the sacroiliac joints were negative. Additionally, Dr. Morris reported, upon examination, that Plaintiff was able to walk fifty feet in the office; that her speech was clear and she "appear[ed] reliable"; that she was able to dress and undress; that Plaintiff had 5/5 strength of the quadriceps right and left; that her sensation was intact; that deep tendon reflexes were 2/4 in both knees; and that the impression regarding Plaintiff's knees was "negative." Tr. 13-14, 492-93.    As considered by the ALJ, Dr. Fazuir completed a Physical RFC Questionnaire on October 28, 2009, and reported that he first saw Plaintiff in 2002 and had been seeing her every six months.  As noted by the ALJ, Dr. Fazuir further reported that Plaintiff could sit, stand, or walk for less than two hours in an 8-hour workday; that she could rarely lift less than ten pounds; that she could never lift up to ten pounds; that she could never twist, stoop, crouch, climb ladders, or climb stairs; that she could occasionally look down, turn her head right or left, look up, and hold her head in a static position; that she needed to include periods of walking around during an 8-hour day; that she should keep her leg elevated intermittently during the day; and that, on an average, Plaintiff would miss more than four days of work each month due to her impairments.  Dr. Fazuir further reported that Plaintiff was incapable of even low stress jobs. Tr. 14, 479-82.  The court finds that the ALJ properly considered Plaintiff's medical records when considering her credibility and that the ALJ's decision, in this regard, is supported by substantial evidence.

18

**B.    Plaintiff's RFC:**

The ALJ found that Plaintiff had the RFC for sedentary work with the following limitations: she must be allowed to rotate positions frequently; she can never climb ramps, stairs, ropes, ladders, and scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she should avoid concentrated exposure to excessive vibration, to industrial hazards, and unprotected heights; she is unable to operate foot controls; and she must be allowed to use a cane to assist with ambulation. Tr. 11-12. Plaintiff contends that this RFC determination is not based on substantial evidence because the ALJ failed to point to "some" medical evidence to support his conclusion. Plaintiff also contends that, upon determining her RFC, the ALJ should have given controlling weight to the opinion of Dr. Faquir, who was a treating physician.

20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Additionally the range of sedentary jobs requires a claimant "to be able to walk or stand

for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185 at *7). Moreover, SSR 96-9p requires that "the RFC assessment should include the frequency with which an applicant needs to alternate between sitting and standing, and if the need exists, that vocational expert testimony may be more appropriate than the grids." Id. It also states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled." Id.

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker, 363 F.3d at 783(quoting McKinney, 228 F.3d at 863). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ

should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591. As discussed above, in Plaintiff's case, the ALJ considered Plaintiff's medical records and the objective findings reported therein. Significantly, the ALJ incorporated the objective medical findings into Plaintiff's RFC.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo, 377 F.3d at 806. "If a claimant establishes her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff, 421 F.3d at 790 (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the

burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish [his or] her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363

F.3d at 737). See also Vossen, 612 F.3d at 1016. Consistent with these requirements, the ALJ in the matter under consideration considered the requirements of sedentary work and concluded that Plaintiff had the additional limitations set forth above.

Upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions, and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The RFC need only include a plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). Pursuant to this requirement, as discussed above, the ALJ found that Plaintiff's subjective complaints were not credible. The court has found the ALJ's credibility determination is based on substantial evidence and that his credibility

findings are consistent with the Regulations and case law.

To the extent Plaintiff contends that there is no medical evidence to suggest she can engage in sedentary work, as discussed above, MRI results of Plaintiff's knee were unremarkable; an MRI showed that her spinal cord was normal; Dr. Kranzusch reported that views of Plaintiff's ankle and foot showed excellent union of her ankle with the hardware; Dr. Kranzusch opined in December 2008 that Plaintiff could lift no more than forty pounds; in February 2009, Dr. Kranzusch reported that there were no areas of acute pain elicited on palpation and that edema was mild; February 2009 emergency room notes stated that Plaintiff moved all extremities with good tome, she had intact musculoskeletal structures with no swelling, and that she had normal ROM in all four extremities; upon examination of Plaintiff, Dr. Morris reported that Plaintiff could walk fifty feet, and had 5/5 strength in the quadriceps; and Dr. Morris's impression of Plaintiff's knees was negative. Significantly, no doctor opined that Plaintiff could not work at all with her herniated disc. As discussed above, in December 2008, Dr. Kranzusch opined that Plaintiff could work at a job where she was not required to be on her feet and it was suggested that Plaintiff undergo vocational training. As such, the court finds that the ALJ's consideration of the medical records in conjunction with his determination of Plaintiff's RFC is based on substantial evidence and that Plaintiff's medical records are consistent with the ALJ's RFC determination. Further, the ALJ's RFC determination is well-supported by medically accepted clinical and diagnostic techniques and is consistent with other substantial evidence in the record. See Singh, 222 F.3d at 448.

To the extent Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because he did not give controlling weight to Dr. Fazuir's opinion, the ALJ did consider the Physical RFC Questionnaire completed by Dr. Fazuir, including the limitations placed

on her by Dr. Fazuir. Tr. 14. Consistent with the Regulations and case law, the ALJ considered that

Dr. Fazuir was Plaintiff's treating physician and that, as such, his opinion was only entitled to

controlling weight if it was supported by medically acceptable clinical and laboratory diagnostic

techniques. See Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. §

404.1527(d)(2) (2000)); Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009); Prosch v. Apfel, 201

F.3d 1010, 1012-13 (8th Cir. 2000).   The ALJ found that Dr. Fazuir's opinion was not entitled to

controlling weight because it consisted of vague and conclusory statements. A treating physician's

checkmarks on a form, however, are conclusory opinions which can be discounted if contradicted by

other objective medical evidence. See Stormo, 377 F.3d at 805-06; Hogan, 239 F.3d at 961; Social

Security Ruling 96-2p, (July 2, 1996).

Consistent with the Regulations and case law, the ALJ also considered that Dr. Fazuir's

opinion, as stated on the Physical RFC Questionnaire, was unsupported by Dr. Fazuir's office notes

and that Dr. Fazuir's office notes reflect that his treatment of Plaintiff was routine and conservative

and not the type of intensive treatment to be expected by a person who is disabled. Tr. 14. See

Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion

does not automatically control or obviate need to evaluate the record as whole and upholding the

ALJ's decision to discount the treating physician's medical-source statement where limitations were

never mentioned in numerous treatment records or supported by any explanation); Hacker v.

Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are

inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment);

Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d

422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining

disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion).

Additionally, consistent with the Regulations and case law, the ALJ considered that no other doctor imposed limitations on Plaintiff's activities similar to those limitations imposed by Dr. Fazuir on the Physical RFC Questionnaire. As stated above, the March 2009 MRI of Plaintiff's right knee was unremarkable. Dr. Kranzusch, who was also Plaintiff's treating doctor and a specialist who treated Plaintiff for her foot problems,[1] reported in February 2009 that the hardware in Plaintiff's ankle was in place. Further, Dr. Kranzusch specifically stated, in December 2008, that Plaintiff could work in a job which did not require her to be on her feet. He even said that she could lift up to forty pounds. In February 2009, after noting Plaintiff's complaints regarding pain, Dr. Kranzusch reported that he discussed vocational training with Plaintiff and that objective findings were not consistent with Plaintiff's complaints. In June 2009, upon examination of Plaintiff, Dr. Morris reported, among other things, that Plaintiff could walk fifty feet, her sensation was intact and that her knees were negative. An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013. See also Travis, 477 F.3d at 1041 ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). Also, as considered by the ALJ, Dr. Fazuir relied heavily of Plaintiff's subjective report of her symptoms and

---

[1] The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (citation omitted).

limitations. As discussed above, other doctors found Plaintiff's subjective complaints were inconsistent with objective medical findings. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)).

The court finds that the ALJ gave good reason for not giving controlling weight to Dr. Fazuir's opinion as stated on the Physical RFC Questionnaire and that the ALJ's decision, in this regard is supported by substantial evidence. SSR 96-2p clarifies that 20 C.F.R. §§ 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." 1996 WL 374188, *2, 5 (S.S.A. July 2, 1996). See also Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007); King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, or diagnostic evidence). Thus, the court finds that the ALJ gave proper weight to Dr. Fazuir's opinion and that his decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.

The court finds that the ALJ's conclusion that Plaintiff can engage in sedentary work, with the stated restrictions, is consistent with his findings regarding the medical evidence and Plaintiff's credibility and that it is based on substantial evidence on the record. Moreover, the ALJ's determination of Plaintiff's RFC is precise as it directly addresses her restrictions and the requirements of sedentary work. Additionally, the ALJ's assessment of Plaintiff's RFC is based upon

and is consistent with all of the relevant evidence. See McKinney, 228 F.3d at 863 ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citing Anderson, 51 F.3d at 779. The court finds, therefore, that Plaintiff's argument that the ALJ's determination of her RFC is not supported by substantial evidence is without merit.

## D.    Hypothetical to the Vocational Expert:

Plaintiff claims that the ALJ did not pose a proper hypothetical to the VE and that, therefore, the ALJ's finding that there is work which Plaintiff can perform is not supported by substantial evidence. The ALJ posed a hypothetical to the VE which was consistent with this RFC finding in that the hypothetical person could engage in sedentary work with the additional limitations imposed by the ALJ in the RFC assigned to Plaintiff. Additionally, the ALJ asked the VE to consider that the hypothetical person was Plaintiff's age and had the same educational level and past work experience of Plaintiff. Tr. 39. The VE responded that the hypothetical person could not perform Plaintiff's past relevant work but that there were jobs in the national and local economy which such a person could perform. These jobs included telemarketing and cashier jobs. Tr. 40-41.

An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Martise v. Astrue, 641 F.3d 909 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix, 465 F.3d at 889 (8th Cir. 2006)); Guilliams, 393 F.3d at 804 (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); Gilbert v. Apfel, 175 F.3d 602,

604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); <u>Sobania v. Sec'y of Health, Educ. & Human Servs.</u>, 879 F.2d 441, 445 (8th Cir. 1989); <u>Rautio</u>, 862 F.2d at 180. The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. <u>Haggard v. Apfel</u>, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); <u>Hunt v. Massanari</u>, 250 F.3d 622, 625 (8th Cir. 2001); <u>Sobana</u>, 879 F.2d at 445; <u>Roberts v. Heckler</u>, 783 F.2d 110, 112 (8th Cir. 1985). Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision. <u>Martise</u>, 641 F3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting <u>Lacroix</u>, 465 F.3d at 889; <u>Robson v. Astrue</u>, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); <u>Wingert v. Bowen</u>, 894 F.2d 296, 298 (8th Cir. 1990). The hypothetical posed to the VE in the matter under consideration, upon which hypothetical the ALJ relied, included all of Plaintiff's limitations which the ALJ found credible. Therefore, this hypothetical was properly posed to the VE and the ALJ properly relied on the VE's response that there was work which the hypothetical person could perform. The court finds, therefore, that the ALJ's determination that there is work in the local and national economy which Plaintiff can perform is supported by substantial evidence. Because the ALJ's decision, in this regard is supported by substantial evidence, the ALJ properly found that

Plaintiff is not disabled.

# IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint be **DENIED**; Docs. 1, 13,

**IT IS FURTHER RECOMMENDED** that a separate judgment be entered incorporating this Report and Recommendation.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of May, 2012.